PUBLIC BUILDINGS COMMISSIONER OF NEWTON *vs.* STAR MARKET CO. & another.

Middlesex. October 6, 1948. — March 10, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Zoning. Equity Jurisdiction, Zoning. Landlord and Tenant, Zoning. Equity Pleading and Practice, Decree.*

A finding, that a use made of premises, zoned for residential purposes only, as a general supply depot for a group of retail food stores located in various other places was different in kind from a use of the premises as a dairy farm existing at the time of the adoption of the zoning ordinance, was not plainly wrong on evidence showing the nature of such uses, respectively, in detail; and a decree enjoining such use of the premises as a supply depot was proper even though it was no more detrimental to the neighborhood than the former use as a dairy farm.

Use of premises in violation of a zoning ordinance by a tenant at will, presumably with the knowledge and consent of the landlord, was a use by the landlord which might be enjoined in a suit in equity against both the tenant and the landlord.

In a suit in equity to enjoin certain uses of premises in violation of a zoning ordinance, a final decree in favor of the plaintiff should be modified by omitting paragraphs enjoining particular uses which had been discontinued before commencement of the suit and a paragraph containing merely a general injunction against uses in violation of the ordinance.

BILL IN EQUITY, filed in the Superior Court on May 5, 1947.

The suit was heard by *Good*, J., by whose order a final decree was entered providing as follows: "1. That the defendants in the uses of the land and buildings . . . [in question] and permitting the present uses of said premises are using the premises for uses that are different in kind from the uses permitted under the zoning ordinance and the amendments thereto of the city of Newton. 2. That the defendants and each of them, their servants and agents, be and hereby are permanently enjoined from making use of the said premises or permitting the uses of said premises for: (a) A delicatessen kitchen for the preparation and cooking of food and food products. (b) A plant for the filleting and processing of fish. (c) A wood-working plant and repair shop equipped with power driven tools. (d) A paint shop. (e) A garage and grease pit for the maintenance and repair of motor vehicles, and storage of motor vehicles, parts and accessories. (f) A pre-packaging plant for fresh vegetables and bulk grocery items and storage of said bulk grocery items. (g) Refrigeration storage for perishable foods. (h) Storage of retail store fixtures and equipment. 3. That the defendants and each of them, their servants and agents, be and hereby are permanently enjoined from making use of the said premises or permitting the uses of said premises in violation of the provisions of the zoning ordinance of the city of Newton."

*T. Chase*, for the defendants.

*J. O. Parker*, for the plaintiff.

WILLIAMS, J. The defendants have appealed from a decree enjoining their use, hereinafter described, of certain premises on Farwell Street in the city of Newton in violation

of the provisions of the zoning ordinance of that city.  The question for decision is whether there has been such a change from the nonconforming use existing at the time the ordinance was adopted in 1922 that the present use falls within the prohibition of the ordinance.  The judge in the Superior Court found that "the present uses of the land and buildings are different in kind from the uses permitted under the zoning ordinance and the amendments thereto," and, "if material, that the present uses of the land and buildings . . . are no more detrimental to the neighborhood than the uses to which the premises" were formerly appropriated.  Summarizing the reported evidence, which is essentially undisputed, it appears that since the adoption of the zoning ordinance the premises have been located in a district restricted to residential use, with certain exceptions not here material.  At the time of the passage of the ordinance they were used by the owners for a dairy farm.  About one thousand quarts of milk were handled each day, a large part of which was produced from a herd of cows ranging from thirty-five to sixty-eight in number.  The milk was pasteurized, and delivered to customers by seven or more horse drawn wagons.  Machines were employed for milking and pasteurizing, and for sterilizing and filling the bottles.  There was a machine for cutting corn for ensilage, a small ammonia compressor to make ice used in packing the milk in the delivery wagons, and a boiler for heating water.  In addition there were two trucks and a tractor.  Storage was provided for the ensilage in silos and for extra bottles and bottle caps in the buildings.  The barns were used to store food for the livestock.  Cream for delivery and sale was purchased from outside sources.  There was no business in cheese and butter.  Incidental work necessary to the operation of the farm, such as washing and greasing of vehicles and the making of minor repairs to keep the equipment in good order, was performed on the premises.  In 1928 the farm was bought by the Noble company and in 1934 was acquired by the defendant H. P. Hood & Sons, Inc.  Under the Noble and Hood managements and until 1942 the prem-

ises were used as a distributing center for milk and other
dairy products. Nothing was produced on the farm, but
products for sale were brought in from the outside, trans-
ferred to motor trucks, and then delivered to customers.
From 1944 until the present time the premises have been
occupied and maintained by the defendant Star Market Co.
as a tenant at will of H. P. Hood & Sons, Inc.

Star Market Co. is engaged in the sale and distribution of
food mainly through its stores in Newtonville, Watertown,
Wellesley and Somerville. In these stores it sells meat, fish,
produce, delicatessen, groceries and dairy products. The
premises on Farwell Street are used by it as a general supply
depot in which food is prepared and processed, equipment
and supplies are stored, and fixtures and equipment includ-
ing counters, shelves and carriages used in the stores are
repaired and painted. To some extent the counters and
shelves are manufactured. Fishcakes are fried, and hams
and beef as well as chicken and beef pies are cooked. Salads
are made. Coffee, walnuts, hard candies, cheese and cookies
are packaged. Uncooked vegetables such as beets, cabbage,
spinach and carrots are washed, trimmed and wrapped in
cellophane. The equipment of the depot includes stoves, a
salad mixing machine, a vegetable shredder, a potato peeler,
a steam oven, and a deep frying kettle. Perishable food
products are stored in a cooler and an outdoor refrigeration
unit. A compressor operates the cooler and an ice machine
prepares flaked ice. Cardboard boxes, tools, paint supplies,
store shelving and equipment, both used and unused, for
the maintenance and repair of the stores are kept on the
premises. For repairing and fabricating there are power
driven tools including a band saw, a round blade ripsaw,
a radio saw, a planer, and a shearer for snipping and bend-
ing sheet metal.

It is apparent from the foregoing summary that the
judge's finding that "the present uses of the land and
buildings are different in kind from the [nonconforming]
uses permitted under the zoning ordinance" is not plainly
wrong. In *Moulton* v. *Building Inspector of Milton*, 312

Mass. 195, 199, 198, a case dealing with the characteristics of a dairy farm, the court said: "The tilling of the soil, the raising and storing of forage crops, and the feeding of them to cattle to produce milk constitute essentially an agricultural operation." The silo "is a part of the regular equipment of most farms." The same also may be said in reference to horses and wagons or in more recent times to motor trucks used to deliver the produce of a farm. Storing the produce, preparing it for market, and maintaining the equipment in ordinary repair are also activities incidental to operating a farm.

It is patent that the present tenant of the premises is not conducting a dairy farm nor is it using the premises for any agricultural purpose. Without generally characterizing the business now being carried on, essentially it involves the cooking of meats, the washing, packaging and processing of vegetables and other food products for sale in stores remote from the premises, and also the manufacture, painting and repair of the equipment for these stores.

Whether the present use of the premises is no more detrimental to the neighborhood than the former use is not material where, as here, the characteristics of the respective uses are manifestly dissimilar.

The use of the premises by the tenant Star Market Co. presumably with the knowledge and consent of the landlord H. P. Hood & Sons, Inc., who had a right to terminate the tenancy, was a use by the defendant H. P. Hood & Sons, Inc., which, being in violation of the ordinance, may be enjoined. *Lexington* v. *Bean,* 272 Mass. 547, 554.

In the decree, paragraphs numbered 2 (b) and 2 (e) concern the use of the premises for the filleting and processing of fish and as a garage and grease pit for the maintenance and repair of motor vehicles, and storage of motor vehicles, parts and accessories, which uses were discontinued before the filing of the present bill. Paragraph 3 of the decree is a general injunction against uses in violation of the ordinance and is too comprehensive in its terms to

be‿readily enforceable. The decree, therefore, is modified by striking out its provisions numbered 2 (b), 2 (e), and 3, and as so modified it is affirmed with costs.

*So ordered.*