TOWN OF NEEDHAM *vs.* WINSLOW NURSERIES, INC. &
another.

Norfolk.    December 1, 1952. — April 2, 1953.

Present: QUA, C.J., LUMMUS, RONAN, WILLIAMS, & COUNIHAN, JJ.

*Zoning. Needham. Greenhouse. Nursery. Store. Sign. Law or Fact.
   Words, "Greenhouse," "Nursery."*

The meaning of the words "greenhouses" and "nurseries" in a provision
   of the zoning by-law of Needham permitting the use of premises for
   "Farms, stock farms, greenhouses, nurseries and truck gardens" was
   a question of law to be determined without extrinsic evidence. [99,
   100]
Statement by WILLIAMS, J., as to the meaning of the words "greenhouses"
   and "nurseries" as used in the zoning by-law of Needham. [100]
Under the zoning by-law of Needham allowing "greenhouses" and "nur-
   series" in the single residence districts, the following activities of a
   corporation operating a large greenhouse and nursery business were
   permissible: the sale of stock not grown on its premises but obtained
   elsewhere and temporarily either transplanted or potted on its premises
   or stored "dormant" there; the sale of fungicides, insecticides, chemi-
   cals, peat moss, humus, mulches, fertilizers and sterilized soil for use
   for the benefit of stock sold; landscaping of lands of its customers
   incidental to the sale of stock from its premises; the use of a soil sterili-
   zation plant for the improvement of the soil of its premises; and pro-
   viding reasonable space on its premises for parking of its customers'
   automobiles — the following activities were not permissible under the
   by-law: the sale of cut Christmas trees and Christmas wreaths not
   produced on its premises but obtained elsewhere; the operation of a
   "garden shop" for the retail sale of sundry items of garden tools and
   equipment; the use of its premises as a headquarters for a substantial
   contract landscaping business not incidental to the sale of stock from
   its premises; the maintenance of certain signs advertising the business;
   the maintenance of unsightly rubbish accumulations; and the use of a
   loud speaker intercommunication system and floodlights on its prem-
   ises. [101–103]

BILL IN EQUITY, filed in the Superior Court on December
7, 1951.

The suit was heard by *Forte,* J.

*Henry W. Hardy,* Town Counsel, for the plaintiff.

*John V. Phelan,* (*Louis J. Ferrari* with him,) for the defendants.

*Edward O. Proctor,* by leave of court, submitted a brief as amicus curiae.

WILLIAMS, J. This is a bill in equity to restrain the use of certain described land in Needham for purposes alleged to be in violation of a zoning by-law of the town. The evidence is reported and a judge of the Superior Court has reported findings of material facts. By the by-law in question, which was enacted in March, 1925, the town is divided into five classes of districts designated as single residence, general residence, institutional, business, and manufacturing. It is provided that in single residence districts (section 3) "no building shall be erected, altered or used and no premises shall be used except for one or more of the following uses: 1. One-family, detached, houses. 2. The taking of boarders or the leasing of rooms by a resident family. 3. Churches, schools, public libraries, public museums, parish houses, philanthropic institutions. 4. Private clubs not conducted as a business. 5. Public parks, playgrounds, municipal recreation buildings, water towers and reservoirs. 6. Farms, stock farms, greenhouses, nurseries and truck gardens. 7. Real estate signs advertising the sale or rental of only the premises on which they are located and bulletin boards accessory to uses specified in 3 and 5 of this section. 8. Public service and other passenger stations."

The land which is the subject of the town's complaint consists of three adjacent parcels of land, totaling approximately 175,000 square feet, owned by the defendant Winslow. They, with three other parcels, one of which is owned by him and two by him and his wife as tenants by the entirety, are occupied by the other defendant, Winslow Nurseries, Inc., as tenant at will and are used by it for a greenhouse and nursery business. Winslow is president of this operating corporation. All six parcels are in a single residence district. On the first of the parcels described in the bill there is a "sales and growing" greenhouse to which are attached a greenhouse workshop, a storage building, a "gar-

den shop," and an office. Near by there are a second storage shed and another greenhouse with a wing and heating plant. The floor area of all of these buildings is about 10,245 square feet. A new sales greenhouse 60 feet long by 40 feet wide is in process of construction. The land not occupied by the buildings on this parcel and the second and third parcels, which are separated from the first parcel by a street, are used for growing nursery stock. The defendants propose to construct on the second parcel a parking lot 260 feet long by 80 feet wide which will accommodate sixty automobiles.

There are findings that Winslow Nurseries, Inc., hereinafter referred to as the defendant, carries on the following activities upon the premises: "1. The growing of trees, shrubs and plants. 2. The sale of trees, shrubs and plants grown upon said premises. 3. The storage and sale of substantial quantities of trees, shrubs and plants which are grown elsewhere than on said premises but which are obtained for sale on the premises. 4. The storage and sale upon the premises during the Christmas season of substantial quantities of cut Christmas trees, and of Christmas wreaths, grown elsewhere than on the premises, and brought in for sale . . . . 5. Sale of peat moss, fertilizers, humus, and mulches. 6. The business of contracting to plant trees, shrubs, plants and lawns for others, using nursery stock both grown on the premises and obtained elsewhere. 7. The maintenance of trucks, and other mechanical equipment, including both indoor and outdoor steam earth sterilizers, for use in connection with the nursery business. 8. Signs on or near defendants' principal place of business, advertising the business carried on by the defendant corporation and the sale of particular products or articles in season. 9. Signs located on outlying growing areas bearing the defendant corporation's name and telephone number. 10. A small sales or garden shop containing the following articles . . . : a. Hose, sprinklers and nozzles b. Fungicides, insecticides and chemicals c. Sterilized soil and soil conditioners (lime) d. Fertilizers, liquid and powder

e. Mowers, spreaders, sweepers, and garden carts  f. Spray-
ers and dusters  g. Tools (stand up) including rakes, hoes
and shovels  h. Tools (hand) including shears, pruners and
trowels  i. Books on the care of trees, plants and shrubs
j. Wooden trellis, and garden ornaments  k. Labels, stakes
and guides  l. Pottery (outdoor garden and greenhouse)
m. Pottery, decorative  n. Bird houses, bird baths, bird
feeders and bird seeds  o. Christmas candles and deco-
rations, nonfloral  p. Flower, vegetable and grass seeds
q. Cold frames." In addition to the greenhouses, the gar-
den shop, the soil sterilizer and the signs, it maintains on
the premises flood lights and a loud speaker intercommuni-
cating system.

The extent of the defendant's business is reflected in its
gross receipts, which in the fiscal year ending in February,
1952, totaled $419,738.37. Of this sum more than half rep-
resented sales on the premises, and the balance receipts
from contract work on landscaping and housing projects.
During the last two fiscal years approximately 40% of the
defendant's gross sales consisted of trees, shrubs, and vines.
Of such sales 40% to 50% were of plants not grown on the
premises. In the same years sales of greenhouse plants
constituted 8.5% and 5.9% of gross sales, and sales of fer-
tilizers, roses, bulbs, and grass seed from 3% to 5% of gross
sales. "Substantially all of these [last named] articles . . .
were brought in from outside. Perennials, annuals and vege-
table plants . . . were nearly all raised on the premises."
During the months of April, May, and December "as many
as 400 to 600 retail sales are made on the premises on peak
days," resulting in "a large amount of automobile traffic."

The plaintiff contends that, except for the cultivation and
sale of trees, shrubs and plants grown on the premises,
the activities of the defendant violate the zoning by-law.
Whether this is so depends on the nature of the business
which is permitted by the by-law under the designations
"greenhouses" and "nurseries." As bearing on the meaning
of these words, the judge, subject to the plaintiff's excep-
tions, admitted evidence of the customary scope of the

greenhouse and nursery business as actually carried on in 1925 when the by-law was enacted. In his findings he states, "If the words 'nurseries' and 'greenhouses' in the zoning by-law may, as matter of law, be defined in the light of the custom and usage of the business as generally practised at the time of its enactment, I find that the defendant has conducted its business within the terms of the by-law."

He ordered an interlocutory decree to be entered enjoining the use of a "loud speaker intercommunication system," the use of floodlights focussed beyond the defendant's premises, and the maintenance of unsightly rubbish accumulations, all of which "are unnecessary to the conduct of the business and constitute an annoyance to the neighbors." He further ordered that, "except as so stated, a decree shall be entered, adjudicating that the defendants are not, and neither of them is in violation of the zoning by-law, and that the further relief prayed for against them be denied." "Being of opinion that this order so affects the merits of the controversy that the matter ought, before further proceedings, to be determined by the full court, I report the case for that purpose, upon the pleadings, evidence and findings of material facts and order for decree, and stay all further proceedings except under the interlocutory decree, and except that the stipulation relating to the use of the parking lot shall remain in full force and effect, pending the decision of the full court."[1]

Greenhouse and nursery are words in common use and there is nothing in the by-law to indicate that it was intended to employ them in other than their ordinary sense. They are to be interpreted according to the common and approved usage of the language without enlargement or restriction. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148. *Moulton* v. *Building Inspector of Milton*, 312 Mass. 195, 198. Their respective meanings are questions of law for the court. *Boston* v. *Boston Elevated Railway*, 213

[1] The stipulation is not contained in the record.

Mass. 407, 411. *Selectmen of Natick* v. *Boston & Albany Railroad,* 210 Mass. 229, 232. The word greenhouse was recently construed by us in *Kenney* v. *Building Commissioner of Melrose,* 315 Mass. 291. It refers to a building principally constructed of glass wherein plants, flowers, and sometimes vegetables are raised for purposes of sale. The greenhouse business involves the cultivation of these or similar products of the soil and the disposal of them to purchasers. The by-law distinguishes the business of a greenhouse from that of a florist which is permitted in a business district presumably on the ground that sales from a greenhouse ordinarily are of the produce of the premises.

According to dictionary definition a nursery is a place where trees, shrubs, plants, and so forth, are propagated from seed or otherwise for transplanting, for use as stock for grafting, and for sale. See *Miethke* v. *Pierce County,* 173 Wash. 381; *Attorney General* v. *State Board of Judges,* 38 Cal. 291, 296; *Miller* v. *Baker,* 1 Met. 27; *Whitmarsh* v. *Walker,* 1 Met. 313; *Paine* v. *Assessors of Weston,* 297 Mass. 173. It is essentially a tree plantation or, as suggested in *Kenney* v. *Building Commissioner of Melrose,* 315 Mass. 291, at page 295, a "tree farm." In subsection 6 of section 3 of the by-law the word nurseries appears in conjunction with the words farms, stock farms, greenhouses, and truck gardens, all common terms referring to various uses of land for agricultural purposes. Extrinsic evidence to ascertain its meaning is no more required than is evidence respecting the meaning of greenhouse (see the *Kenney* case) or of farms (see *Winship* v. *Inspector of Buildings of Wakefield,* 274 Mass. 380; *Moulton* v. *Building Inspector of Milton,* 312 Mass. 195; *Lincoln* v. *Murphy,* 314 Mass. 16; *Deutschmann* v. *Board of Appeals of Canton,* 325 Mass. 297). We may add that the admitted evidence did not in our opinion show that the term nursery had acquired, except possibly in the trade, any generally accepted secondary meaning.

We proceed to consider in what respects, if any, the defendant is engaged in activities outside of those clearly permitted by the by-law or inferentially permitted as reason-

ably incident to the business of a greenhouse and of a nursery as heretofore defined. As the general conclusion of the judge was founded on what we believe to have been an erroneous conception of the meaning to be attached to the words in dispute it must, although largely based upon oral testimony, be disregarded.

An incidental or accessory use under a zoning law is a use which is dependent on or pertains to the principal or main use. Accessory uses are impliedly recognized by the by-law. Section 2, subsection e, provides that "An accessory use or building is a use or building customarily incident to and located on the same lot with another use or building," and section 12 that "Accessory uses shall be on the same lot with the building of the owner or lessee, and shall be such as do not alter the character of the premises on which they are located nor impair the neighborhood."

A substantial part of the defendant's business is the sale of plants (by which term we include trees, shrubs, and vines) which are not grown on the premises. As much of the stock for which there is a demand can be grown in this climate only at certain seasons, it is customary for the defendant to purchase plants in parts of the country where they can be grown, to store them on its premises, and to resell them for transplanting in season. Some of the plants so purchased are temporarily planted or potted under glass, others are stored in ventilated buildings and kept "dormant." They remain alive but do not grow. We have no doubt that plants purchased elsewhere and transplanted into the soil of the nursery thereafter become the product of the nursery. We also think plants acquired and treated on the premises so that they continue to live are fundamentally in the same category. They are, in kind, stock which a nursery may raise and sell and their treatment seems only to differ in degree from that afforded by an actual transplanting. We find in these instances no violation of the by-law. The sale of Christmas trees and wreaths presents a different question. Neither the trees nor the materials for the wreaths are raised in the nursery. Their sale is not of living plants but of dead

wood.  Transactions in these articles are no part of the nursery or greenhouse business and are not incidental thereto.

The defendant maintains a shop called a "garden shop" where it sells the various articles mentioned in the judge's findings, including many tools and much equipment for the garden.  It seems clear that it is conducting a retail store which under the by-law is only permissible in a business district (see section 6, subsection 1).  It is also selling articles which are not incidents of the products of a greenhouse or of a nursery.  It is thereby violating the by-law.  Although denied the right to maintain a store, we think that the defendant is not precluded from selling to customers in connection with its sale of plants such fungicides, insecticides, chemicals, peat moss, humus, mulches, and fertilizers as are intended to be used in preserving the life and health of the plants sold.

A substantial part of its business is the landscaping of private estates and housing projects.  In connection therewith it enters into contracts, provides trees and shrubs, and attends to their planting.  It uses seven or more trucks and employs at times as many as sixty men on this work.  Many of these men never come to the nursery and much of the planted material is obtained elsewhere and goes directly to the job.  The trucks are kept on the defendant's premises. The by-law permits the business of a "contractor" to be carried on only in a business district (see section 6, subsection 6).  Doubtless the defendant may engage in landscaping as a part of the planning and preparation of the land for the planting of trees and shrubs which it intends to sell from its nursery.  It may enter into contracts for such work. We think, however, its premises cannot be used as headquarters for a contracting business which does not concern the transplanting of the defendant's own nursery stock or the stock which has physically become a part of the nursery. Such use exceeds what is reasonably accessory to its principal business, as does the maintenance on the premises of more trucks than are necessary for the delivery of its own products.

The use of the soil sterilization plant, if limited to improv-

ing the soil of the nursery, is a permissible accessory use. The right to sell the sterilized soil is subject to the restrictions which apply to the sale of fertilizers and chemicals.

The five advertising signs, several of substantial size, are maintained in violation of section 3, subsection 7, of the by-law which impliedly limits signs in a single residence district to those which are therein specified. See *Lexington* v. *Govenar,* 295 Mass. 31.

There is no mention in the by-law of parking lots or areas although there are restrictions respecting garages and filling stations. The defendant may, we think, provide reasonable space on its premises where customers may leave their automobiles while transacting business with the defendant. Whether such use will be of such nature or extent that it will impair the residential character of the neighborhood cannot now be determined.

The order of the Superior Court is reversed. A final decree is to be entered enjoining both defendants (see *Public Buildings Commissioner of Newton* v. *Star Market Co.* 324 Mass. 75, 79) from violating the by-law in the manner hereinbefore indicated and in the manner stated in the interlocutory decree. The plaintiff is entitled to the costs of appeal.

*So ordered.*