JAMES M. SALAH vs. BOARD OF APPEALS OF CANTON.

Norfolk.   October 16, 1973. — August 5, 1974.

Present: ROSE, KEVILLE, & GOODMAN, JJ.

Zoning, "Site plan approval," Special permit, Accessory use. *Equity Pleading and Practice,* Zoning appeal.   *Words,* "Warehouse," "Distribution plant," "Accessory use."

A facility to be used for distribution of merchandise from wholesalers to retailers and for related storage, even though operated by a common carrier, was a distribution plant within the meaning of a zoning by-law permitting as of right in a limited business district use as a "warehouse or distribution plant" for certain products, and was a permitted use under the by-law if confined to the distribution of goods there specified.   [490-494]

Although upon an appeal from a decision of a zoning board of appeals to the Superior Court the judge rightly annulled the board's decision in that the proposed use of a site was permitted as of right under the town's zoning by-law, he erroneously included in the decree an order for approval of the site plan and issuance of all necessary building permits, where neither the board's decision nor the report of a master upon which the decree was based contained sufficient findings that the proposed site plan would meet the standards set forth for such use in the zoning by-law.   [494-495]

The fact that garages were not mentioned in a section of a town's zoning by-law permitting "[a]ccessory use incidental to a permitted main use, including . . . [four enumerated uses]" did not warrant a zoning board's conclusion that, as a matter of law, a garage for the servicing and maintenance of vehicles and parking space for vehicles were not permitted as accessory uses incidental to a plant for the distribution of merchandise from wholesalers to retailers.   [496-497]

Upon an appeal from a decision of a zoning board of appeals to the Superior Court, a master's general finding that the board had acted "arbitrarily and capriciously," which was not borne out by

the record nor supported by any subsidiary finding, did not warrant assessment of costs against the board under G. L. c. 40A, § 21. [497]

BILL IN EQUITY filed in the Superior Court on June 22, 1972.

The suit was heard by *Leen, J.*, on a master's report.

*Joseph H. Malloy,* Town Counsel, for the Board of Appeals of Canton.

*Edwin V. Woodsome, Jr. (Loyd M. Starrett* with him) for the plaintiff.

GOODMAN, J. The board of appeals of the town of Canton (board) appeals from a final decree of the Superior Court annulling the decision of the board which had concluded that a use proposed by the plaintiff was not within the permissible uses listed in the town's zoning by-law and had refused to approve a site plan submitted by the plaintiff pursuant to the by-law. See *Y. D. Dugout, Inc.* v. *Board of Appeals of Canton,* 357 Mass. 25, 26-28, 31 (1970), describing and upholding the validity of the provisions for "site plan approval." See also 1970 Ann. Surv. of Mass. Law, § 17.1, p. 454. The decree also ordered the board to approve the plaintiff's site plan and to direct the building inspector "to issue all necessary building permits"; costs were awarded to the plaintiff. The decree is based on a master's report, which we summarize.

The plaintiff submitted to the board an application for approval of a site plan for the development of a parcel of 5.89 acres owned by the plaintiff and to be leased to an "intrastate common carrier by motor vehicle" (the lessee). Most of the area would be surfaced and fenced and would include two buildings — one of 47,880 square feet, and the smaller one to be used as a garage.[1] "Part of the principal building was to be used for warehousing, part for office space and part as a receiving and delivery

---

[1] The master's report does not state the size. The board's decision incorporated in the master's report states it to be 8,400 square feet.

terminal with extended loading dock facilities. . . . The Parcel would have a rail siding to or into the principal building, and freight car traffic would be one car or series of cars per week." There would be approximately thirty truck movements out of the site in the morning of each business day (Monday through Friday), approximately ten movements during the business day, and approximately thirty movements at the end of the business day. The area contains a number of similar sites, and the added traffic would not be appreciable. Normal operations would not include night traffic. "As accessory uses certain of the lessee's vehicles would be stored on the Parcel from time to time when not in use and the proposed garage would be used for servicing and preventive maintenance of the lessee's vehicles." There would be 194 "[t]otal 'active' and 'inactive' parking spaces."

The master found that the lessee "would be distributing . . . from the manufacture to retailers such as discount department stores," and that the "uses proposed for the Parcel . . . would be those comprising the business of any intrastate common carrier by motor vehicle engaged in the storage and distribution of articles which may be produced in a limited industrial zone pursuant to clauses 1(a) through 1(g) of section III-E of the Canton Zoning By-Law and articles described in clause 1(h) of said section III-E." The zoning by-law of Canton referred to by the master[2] divided the town into classes of districts

---

[2] The zoning by-law of Canton was transmitted to us as an exhibit under a certification which we construe to be pursuant to Rule 1:06 of the Appeals Court, 1 Mass. App. Ct. 886 (1972). This did not make it part of the record. *Dodge* v. *Inspector of Bldgs. of Newburyport*, 340 Mass. 382, 386 (1960). However, the by-law was referred to in the report (*Leventhal* v. *Jennings,* 311 Mass. 622, 624 [1942]) and by the parties in the briefs and argument. We consider it, but observe that it would have been desirable for the master to have specifically incorporated the by-law in the record to avoid any ambiguity as to its status. See *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329, 330, fn. 1 (1962), and cases cited.

including (besides residential districts and business districts) limited industrial districts and industrial districts. The uses listed "as of right" for limited industrial districts include among others[3] (§ III-E 1[h]) "[w]arehouse or distribution plant for [certain enumerated products] or any products of manufacturing activities permitted by this paragraph [§ III-E 1] (whether or not produced on the premises)."[4]

The contentions of both parties are focused on the issue whether the operation proposed is a "warehouse or distribution plant." Both parties have in varying degree analyzed the phrase into its components "warehouse" and "distribution plant," but neither the master's report nor the trial judge makes this distinction.[5] The master's report appears to view the facility as an entity to be used in the storage and movement of goods from manufacturer to retailer without reference to the relative importance of the storage function. The real question, we believe, is whether this complex is a "distribution plant" containing, as it ordinarily does, a storage component. *Kreger* v. *Public Bldgs. Commr. of Newton*, 353 Mass. 622, 623, 626 (1968), characterizing as "a distribution plant" a facility described as "tanks to hold oil, with necessary

---

[3] These are what might be termed light manufacturing uses, e.g., "(b) Plant for manufacturing of electrical or electronic devices, appliances, apparatus or supplies. . . . (f) Plant for light metal fabrication or finishing, but not including heavy punch presses or drop hammers unless authorized by the Board of Appeals subject to the provisions for authorizing other lawful uses in this District (in Section III-E2)."

[4] Section III-E 1(h) provides in full: "Warehouse or distribution plant for lumber and other building supplies, contractor's equipment, cotton or wool, livestock feed, fertilizer, food, furniture, hardware, metal, paint and paint supplies, tobacco, drugs and allied products, tools, wood or any products of manufacturing activities permitted by this paragraph (whether or not produced on the premises)."

[5] The master found generally that the "site would be operated as a warehouse or distribution plant such as is indicated in the Canton Zoning By-Laws, subsection III-E-I (h)." The final decree referred to the "proposed development . . . of a warehouse and distribution building . . .."

valves and vents, pumping machines, meters, and loading and unloading bays for the oil trucks." See *Cochran v. Roemer,* 287 Mass. 500, 504 (1934), in which the court described a "coal elevator" from which coke was sold at retail to dealers and to industrial users as a "plant . . . for . . . storage of coke and . . . for distribution." Contrast *Pittsburgh & Lake Erie R.R.* v. *Allegheny County,* 283 Pa. 220 (1925), in which a warehouse at a freight terminal was run as a distinct business with storage charges and warehouse receipts.

We therefore examine the phrase "distribution plant" to determine its meaning, as a question of law for this court, from its "common and approved usage" (*Needham* v. *Winslow Nurseries, Inc.* 330 Mass. 95, 99 [1953]) and its context in the by-law. See *Jackson* v. *Building Inspector of Brockton,* 351 Mass. 472, 475 (1966); *Carpenter* v. *Zoning Bd. of Appeals of Framingham,* 352 Mass. 54, 58-61 (1967); *Kreger* v. *Public Bldgs. Commr. of Newton,* 353 Mass. 622, 624-626 (1968).

The board argues that the proposed facility is a trucking terminal operated by a common carrier and that the phrase "distribution plant" excludes such an operation. It points to the dictionary definition of "distributor" as "one that markets a commodity; esp.: wholesaler." Webster's Third New Intl. Dictionary, p. 660.

Though we agree that a trucking terminal is not in common usage a "distribution plant," we believe that the board gives the phrase, "distribution plant," too restrictive a meaning. In the *Kreger* case, *supra,* the owner of the "distribution plant" was not the owner of the bulk of the oil distributed through the facility. In *Westborough* v. *Department of Pub. Util.* 358 Mass. 716, 717 (1971), a proposed facility was described as "a freight yard, unloading facility, and *distribution* center for automobiles" (emphasis supplied) and (as appears from the original papers) was to be used by a railroad in connection with its contract with an automobile manufacturer. The words "distribution" and "distri-

bution plant" as used in these cases fit the proposed use described by the master.   They connote the function of and facility for receiving and storing merchandise and shipping it in smaller quantities to retail outlets.   As the *Kreger* case indicates, the facility is no less a "distribution plant" because the function is not performed by the owner of the goods and, as the *Westborough* case indicates, it may be done by a common carrier.   Nor is there anything in the record to indicate that the lessee, though a common carrier, cannot also function as a contract carrier and operator of a distribution plant restricted to specified commodities.   *Mt. Tom Motor Line, Inc.* v. *McKesson & Robbins, Inc.* 325 Mass. 45, 48 (1949).   *Superline Transp. Co. Inc.* v. *My Bread Baking Co.* 350 Mass. 364, 368 (1966).

Accordingly, the board's decision as explained in its brief[6] is wrong as a matter of law, for it is based on the premise that a distribution plant cannot be operated by one who also happens to be a common carrier and that operation by a common carrier makes the facility, no matter how limited, a trucking terminal, something other than a "distribution plant."   We agree with the plaintiff that there appears to be no reason why "[t]he character of the activity in the proposed building is . . . [any] different because . . . an intra-state carrier, is performing this function by contract for a few retail stores instead of the stores doing it themselves," and that the accumulation and storage of goods shipped in from manufacturers by rail or truck to a center from which to distribute these

---

[6] Apart from the explanation in the brief, the board's decision would, in any event, be inadequate because it did not "[set] forth clearly the reason or reasons for . . . [the board's decision] . . .." G. L. c. 40A, § 18.   See *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 295 (1972), involving the grant of a special permit and therefore applicable to decisions under a by-law providing for site plan approval, which "in substance . . . is equivalent to permitting any commercial building construction . . . only upon special permit . . .." *Y. D. Dugout, Inc.* v. *Board of Appeals of Canton,* 357 Mass. 25, 31 (1970).

goods among numerous retail stores is within the common and approved usage of the phrase "distribution plant" and permitted by the by-law, if confined to the goods there specified.

Though the decree correctly annulled the decision of the board, it does not follow that it was proper for the court to order approval of the site plan or the issuance of building permits. It is true, as the plaintiff argues, that a "use" within § III-E 1(h) of the by-law is "permitted as of right" (§ III-E 1), but the "commercial building" proposed is nonetheless subject to the determination "that the further standards contained in § IV D 4 have also been met in the particular case."[7] *Y. D. Dugout, Inc.* v. *Board of Appeals of Canton,* 357 Mass. 25, 30 (1970). Neither the board's decision nor the master's report contains sufficient findings as to the satisfaction of each of the standards in that section. The board did not deal with the matter except in the most cursory fashion,[8] indicating nothing more than a vague scepticism. The

---

[7] Section IV-D 4 sets out the "General Conditions for Approval" as follows:

"In considering a site plan under this Section the Board of Appeals shall assure, to a degree consistent with a reasonable use of the site for the purposes permitted or permissible by the regulations of the district in which located:

"(a) Protection of adjoining premises against detrimental or offensive uses on the site.

"(b) Convenience and safety of vehicular and pedestrian movement within the site, and in relation to adjacent streets, property or improvements.

"(c) Adequacy of the methods of disposal for sewage, refuse and other wastes resulting from the uses permitted or permissible on the site, and the methods of drainage for surface water.

"(d) Adequacy of space for the off-street loading and unloading of vehicles, goods, products, materials and equipment incidental to the normal operation of the establishment."

[8] The board's decision states: "The Board believes that the use of the site as a trucking terminal and the volume of heavy truck traffic

by-law, however, "implies regulation of a use rather than its prohibition" and the imposition of "reasonable terms and conditions" (*Y. D. Dugout* case, *supra,* at 31) which, as the by-law provides, are "[c]onsistent with a reasonable use of the site for the purposes permitted."[9]

The master's report also contains no specific findings addressed to each of the standards of § IV-D 4. It states that the planning board voted to recommend "site plan approval subject only to certain conditions relating to parking facilities and drainage and subject to review by the Board of Health with respect to the proposal of sewage disposal . . .." However, there is no indication just what happened to these recommendations. There is therefore no basis in the master's report for the order in the decree requiring that building permits be issued and that, in effect, the site plan be approved;[10] and the case must be remanded to the board. *Y. D. Dugout, supra,* at 32. *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 300 (1972). See *Tambone* v. *Board of*

---

which may be generated, despite the controls as to routing offered by the Company representatives, which conceivably might be only partially enforceable, may immediately or in the future be deemed to be detrimental or offensive and may, indeed, interfere with the convenience and safety of vehicular traffic in relation to adjacent streets."

[9] It seems to us that the standards enumerated in § IV-D 4 are sufficiently restricted so that their application involves no great difficulty. Note, Administrative Discretion in Zoning, 82 Harv. L. Rev. 668, 678. ("Since noise level, sewage limits, and the like can be qualified, their administration need involve little discretion.")

[10] The master found "as a fact that the respondent should be directed to approve the application . . . for site plan approval." Insofar as this is a general finding it is not supported by the subsidiary findings and cannot stand. *Corrigan* v. *O'Brien,* 353 Mass. 341, 346 (1967). *O'Brien* v. *Dwight,* 363 Mass. 256, 281-282 (1973). *National Hearing Aid Centers, Inc.* v. *Avers, ante,* 285, 286 (1974). Insofar as it is a ruling of law it may be disregarded. *O'Brien* v. *Dwight, supra.* The preference expressed in the *O'Brien* case (at 279-280) for a record made upon a hearing by a judge rather than a master is especially applicable to a zoning appeal like the present case. See *Garelick* v. *Board of Appeals of Franklin,* 350 Mass. 289, 290 (1966).

*Appeal of Stoneham,* 348 Mass. 359, 365 (1965); *Slater v. Board of Appeals of Brookline,* 350 Mass. 70, 74 (1966).

The board, on remand, may also have to consider the question whether and to what extent the garage, proposed to be used for servicing and preventive maintenance, and the storing of the lessee's vehicles are accessory uses within the by-law.[11]  We agree with the board that this in general is a question of fact (*Harvard v. Maxant,* 360 Mass. 432, 437-439 [1971]) which the board must determine initially.  Because the question has been argued and may arise again, we think it advisable to state that we do not agree with the board that, as a matter of law, the garage and storage of vehicles are not permitted as accessory uses.  The failure to mention garages in § III-E 1(n), on which the board relies, seems to us to be immaterial in the context of this by-law.  The four uses listed obviously could not have been intended to exhaust the multifarious possibilities inherent in the broad definition of "accessory use" in § 1-B 1.  Cf. *Hume v. Building Inspector of Westford,* 355 Mass. 179, 180, fn. 1, 181-182 (1969).  "The word 'including' does not lend itself to such destructive significance."  *Phelps Dodge Corp. v. National Labor Relations Bd.* 313 U. S. 177, 189 (1941).  Uses such as those proposed by the plaintiff have, without detailed analysis of the facts, been held to be accessory.  *Needham v. Winslow Nurseries,*

---

[11] Section III-E 1 provides: "In a limited Industrial District, the following uses are permitted as of right: . . . (n) Accessory use incidental to a permitted main use, including:  (1) quarters for necessary caretakers and watchmen, (2) quarters for the transient accommodation of business visitors, (3) restaurant facilities for and sale of items to, and for the personal convenience of, employees, and (4) display and sale of products of manufacturing activities on the premises."

Section I-B 1 contains the following definition: "1.  An 'Accessory Use' is a subordinate use of a building, structure or land customarily incidental to and located on the same lot with the main building, structure or use . . . and which does not constitute, in effect, conversion of the main use of the premises to one not permitted."

*Inc.* 330 Mass. 95, 102 (1953) (maintenance on the premises of trucks used in a permissible landscape contracting business). *Bridgewater* v. *Chuckran,* 351 Mass. 20, 21, 24 (1966) (storage of trucks used in permissible contracting business). See *Superintendent & Inspector of Bldgs. of Cambridge* v. *Villari,* 350 Mass. 176, 177-178 (1966).

Finally, we hold that there is no basis for the assessment of costs against the board. They can be assessed only if the board "acted with gross negligence, in bad faith or with malice." G. L. c. 40A, § 21. The master's report does not permit such a conclusion. The general finding that site plan approval was denied "arbitrarily and capriciously" is not borne out by the record or supported by any subsidiary findings.[12]

The final decree is reversed, and a new final decree is to be entered annulling the board's decision and remanding the case to the board for reconsideration in the light of this opinion. *Y. D. Dugout, Inc.* v. *Board of Appeals of Canton,* 357 Mass. 25, 32 (1970).[13]

*So ordered.*

---

[12] We do not intimate whether the finding in any way meets the statutory standard.

[13] Our disposition of this case makes it unnecessary to deal with the board's objections to the master's report, nos. 5 and 6, the only ones mentioned in its brief.