5 Mass. App. Ct. 613 (1977)
366 N.E.2d 773
TOWN OF FOXBOROUGH & others
vs.
BAY STATE HARNESS HORSE RACING AND BREEDING ASSOCIATION, INC. & another.
Appeals Court of Massachusetts, Suffolk.
November 15, 1976.
August 24, 1977.
Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.
Robert F. Sylvia for the defendants.
Allen E. Erickson, Town Counsel, for the plaintiffs, submitted a brief.
GOODMAN, J.
The defendants appeal from a judgment enjoining them "from conducting a flea market on premises owned by defendant, Bay State Harness Horse Racing and Breeding Association, Inc., [Bay State] in Foxborough, Massachusetts." The judgment was entered in this action for injunctive relief brought by the town of Foxborough, its selectmen, and the building inspector against Jerome D. Coffman and Bay State. Coffman had applied to the selectmen for a license to operate a flea market (more fully described hereinafter) to be located on parking lots (sometimes hereinafter referred to as the premises) leased for this purpose from Bay State which operates a racetrack and related facilities served by the parking lots. The board of selectmen refused the request on the ground that such an operation was prohibited by the Foxborough zoning bylaw as an "[o]ther amusement and recreation service, outdoor" forbidden in the "Special Use District" in which the premises are located. Coffman thereupon conducted a flea market on the premises, being of the view that no license was necessary and that the use did not violate the provisions *615 of the zoning by-law. The plaintiffs then brought this action alleging that the flea market, if permitted to continue, would be in violation of provisions of the special use district of the zoning by-law and provisions of the Sunday closing laws, G.L.c. 136, §§ 4 and 5. The judgment was entered on a statement of agreed facts from which we draw our own inferences in determining the appropriate judgment. Boston Teachers Local 66 v. School Comm. of Boston, 370 Mass. 455, 468, n. 9 (1976), citing Richardson v. Lee Realty Corp., 364 Mass. 632, 634 (1974). We consider whether the operation as described in the statement of agreed facts is (1) prohibited under the zoning by-law or (2) requires a license under G.L.c. 136, § 4,[1] or is prohibited under G.L.c. 136, § 5.[2]
1. Zoning. The statement of agreed facts describes the operation of the flea market as "consist[ing] of various booths at which merchandise would be offered for sale to the general public at retail. The proprietors of each of the booths were to pay to Coffman a charge for permission to operate the booth as a part of the flea market but otherwise would be free to keep whatever profits were generated from their sales during the day. Coffman was to pay a flat rental to Bay State for the Premises, would be required to provide whatever security forces and parking attendants were necessary and was to charge for parking in lots adjacent to the proposed flea market. There was to be no charge for admission *616 to the flea market by patrons." Coffman proposed to conduct this operation on Sundays from 8:00 A.M. to 8:00 P.M., from April 20 through June 30. Annexed to and made a part of the statement of agreed facts is an advertisement announcing the "GRAND OPENING" of the "FLEA MARKET."
The only portion of the Foxborough zoning by-law which is before us is the section entitled "Special Use District," which contains a subsection entitled "Principal Uses" and lists various uses, some designated as "Permitted uses," some as "Uses requiring a Special Use Permit," and some as "Uses specifically prohibited." There is also a second subsection entitled "Accessory Uses" and listing various uses similarly designated.[3] Among the prohibited uses is "[o]ther amusement and recreation service, outdoor"; and the plaintiffs argue that Coffman's operation comes within that prohibition. We see nothing in the statement of agreed facts which supports that contention. The operation as there described yields nothing which would lend plausibility to the notion that the operation somehow provides "recreational shopping" rather than "serious shopping" (see Zayre Corp. v. Attorney Gen., 372 Mass. 423, 447 [1977] [Braucher, J., dissenting])  assuming that there may be circumstances which would make such a distinction viable.
We also reject the plaintiff's assertion (it hardly rises to the level of argument) that the flea market is an accessory use to the parking lots and racetrack and therefore forbidden by the provision in the second subsection (accessory uses) which lists as a prohibited accessory use "8. Trailers or other temporary vehicles or structures for displaying goods or storing them for direct delivery to retail customers" (the accessory use clause). We see no connection between the racetrack and the flea market except that they use the same premises. That this provides an insufficient *617 nexus is obvious from the myriad of cases which have dealt with attempts to use the same locus for different purposes, some of which have been permitted as accessory and some of which have been held not to be accessory and therefore prohibited. See, e.g., Needham v. Winslow Nurseries, Inc., 330 Mass. 95 (1953); Harvard v. Maxant, 360 Mass. 432, 438 (1971).
It seems to us that Coffman's operation, viewed in its totality, is a "retail establishment" designated in the by-law as a permitted use and described as follows: "Retail establishment selling general merchandise, including but not limited to dry goods, apparel and accessories, furniture and home furnishings, home equipment, small wares and hardware, and including discount and limited price variety stores." The word "establishment" in its ordinary meaning encompasses Coffman's operation. "[A]s normally used in business and in government ["establishment"] means a distinct physical place of business. A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 496 [1945]." Ford Motor Co. v. Director of the Div. of Employment Security, 326 Mass. 757, 762 (1951). It is not necessarily enclosed. Thus the Ford Motor Co. case lists "shipyard" as a type of establishment. See Plew v. Horrabin & Co., 176 Iowa 584, 589 (1916); Continental Baking Co. v. Campbell, 176 Okla. 218, 219-220 (1936). Webster's Third New International Dictionary 778 (1971) defines "establishment" as "a more or less fixed and usually sizeable place of business ... together with all the things that are an essential part of it (as grounds, furniture, fixtures ...)." See Black's Law Dictionary (rev. 4th ed. 1968) ("place of business and fixtures"). It thus may exclude the itinerant peddler who does not sell from a "fixed site." Hall-Omar Baking Co. v. Commissioner of Labor & Indus., 344 Mass. 695, 703 (1962). Commonwealth v. Ober, 12 Cush. 493, 495 (1853). Commonwealth v. Bergeron, 296 Mass. 60, 62 (1936). It does not exclude an operation such as the Coffman operation for which the same place is fixed for a number of consecutive Sundays, though the individual booths may be dismantled after each day's business. See Commonwealth v. Morrison, 197 Mass. 199, *618 201 (1908), describing the business of operating a lunch wagon every evening as "at a fixed place" though the wagon was driven off every morning.
Further, a "retail establishment," including as it does "discount and limited price variety stores," connotes "the sale ... in small quantities" (Commonwealth v. Moriarty, 311 Mass. 116, 121 [1942]) of goods displayed on the premises which the customer generally takes with him. This permitted use is not vitiated by the prohibited use in the accessory use clause. An accessory use in its ordinary signification is "a use which is dependent on or pertains to the principal or main use." Needham v. Winslow Nurseries, Inc., 330 Mass. at 101. This is quoted in Harvard v. Maxant, 360 Mass. at 437, which also quotes (at 438-439) from Lawrence v. Zoning Bd. of Appeals of No. Branford, 158 Conn. 509, 512-513 (1969), in which the court said, "It is not enough that the use be subordinate; it must also be attendant or concomitant." See 3 Anderson, American Law of Zoning § 16.11, at 31 (1977), and 3 Williams, American Land Planning Law § 74.14, at 415 (1975).
Moreover, the accessory use clause itself, by including "[t]railers or other temporary vehicles or structures," indicates that the clause contemplates an activity separate from the primary retail business. It would be pointless if what was intended was to prohibit a discount store or supermarket from using movable display cases. Moreover, such an application of the accessory use clause would cast doubt on the validity of the expressly permitted use of a "... stand for wholesale and retail sale of agricultural, horticultural or floricultural products."
Consistent with the principle that a by-law should be interpreted as a harmonious whole (Angus v. Miller, ante, 470, 471-472 [1977]), we do not construe the accessory use clause as vitiating the permissible principal use. If the by-law had intended to prohibit a primary retail business because it was carried on outdoors, the by-law could easily have said so. We note in this connection that the by-law elsewhere makes a distinction between indoor and outdoor activities, e.g., prohibiting "other amusement and recreation *619 service, outdoor" but allowing by special permit "other amusement and recreation service, indoor." We see no reason in the by-law (and the plaintiffs have suggested none) which should impel us to depart from the customary analysis which treats the principal use separately from the accessory use and looks to see what is principal use and what is accessory use. See Jackson v. Building Inspector of Brockton, 351 Mass. 472 (1966); Harvard v. Maxant, 360 Mass. 432 (1971); 1 Rathkopf, Zoning and Planning c. 23, § 3, at 23-24 (3d ed. 1974). Cf. Honigfeld v. Byrnes, 14 N.J. 600, 605-606 (1954). On that analysis the Coffman operation is a principal use permitted as a retail establishment.
2. The Sunday laws. The provisions of G.L.c. 136, § 4 (see fn. 1), have no application in this case because it is clear that no "charge ... is made for the privilege of being present thereat...." While a parking fee of $.50 per automobile was charged, there is nothing in the agreed statement to indicate that the use of those parking lots by visitors to the flea market was a requisite for admission. Nor is the fee paid for the use of a booth a charge to those "engaging therein" within the meaning of § 4. General Laws c. 136, §§ 1, 2 and 4, apply to those paying an admission fee "for the privilege" of attending the various "Sports, Games and Entertainment ..."[4] listed in those sections for the purpose of being "present" as a spectator or "engaging" as a participant in the various activities (e.g., "dancing, ... sport") listed in those sections. A clear distinction is made between such a participant or spectator and one who "sets up, establishes or maintains ... or promotes" the various listed sports, games and entertainment, to which G.L.c. 136, § 3,[5] is applicable. The latter's payment of a fee to *620 maintain a booth is immaterial to the requirement of an admission fee in §§ 1, 2 and 4. We thus need not decide the issue whether in the context of this statute the Coffman operation can be said to be a "fair" within the meaning of §§ 1, 2 and 4.
Nor need we discuss the relationship between the sections listed under the heading "Sports, Games and Entertainment on Sunday," G.L.c. 136, §§ 2, 3 and 4, and the sections under the heading "Business, Trade, Labor or Work on Sunday"[6] (e.g., G.L.c. 136, §§ 5 and 6). The statement of agreed facts characterizes the wares sold at the flea market as "various articles such as paintings, antiques, hand crafted items and the like." By virtue of G.L.c. 136, § 6 (see fn. 2), the sale on Sunday of such items is not prohibited by G.L.c. 136, § 5. We find nothing in the statement of agreed facts from which it can be inferred that anything but such wares was sold at the flea market. Indeed, the plaintiffs' brief states that they "concede that the articles being sold are similar to those as identified in G.L.c. 136, § 6 (29)." There is thus no basis for an injunction against the sale of the merchandise sold at the flea market. See Franz v. Franz, 308 Mass. 262, 264-265 (1941).
Accordingly, the judgment is reversed and a new judgment is to be entered dismissing the action.
So ordered.
NOTES
[1] General Laws c. 136, § 4, as amended through St. 1974, c. 117, provides for the licensing by the selectmen of a town "to hold on Sunday dancing or any game, sport, fair, exposition, play, entertainment or public diversion for which a charge in the form of payment or collection of money or other valuable consideration is made for the privilege of being present thereat or engaging therein...." See G.L.c. 136, §§ 2 and 3, establishing penalties where no license has been obtained.
[2] General Laws c. 136, § 5, as appearing in St. 1962, c. 616, § 2, provides: "Whoever on Sunday keeps open his ... place of business, or sells ... goods, wares, [or] merchandise ... shall be punished...." Also pertinent is G.L.c. 136, § 6 (29), as amended through St. 1974, c. 219, which provides: "Section five shall not prohibit the following: The sale, at retail, of gifts, souvenirs, antiques, hand crafted goods and art goods, in an establishment primarily engaged in the sale of such merchandise, or on the premises of a licensed common victualler."
[3] The parties have argued this case on the basis that the defendants must bring themselves within a listed permitted use. Cf. Building Inspector of Chelmsford v. Belleville, 342 Mass. 216, 217-218 (1961); Harvard v. Maxant, 360 Mass. 432, 435-436 (1971).
[4] This heading, inserted by St. 1962, c. 616, § 2, precedes G.L.c. 136, § 2.
[5] "Whoever on Sunday offers to view, sets up, establishes or maintains, or attempts to set up, establish or maintain, or promotes or assists in such attempt, or promotes, or aids, abets or participates in offering to view, setting up, establishing or maintaining, or acts as proprietor, manager or person in charge of, dancing or any game, sport, fair, exposition, play, entertainment or public diversion for which a charge in the form of the payment of money or other valuable consideration is made for the privilege of being present thereat or engaging therein, and for which a license has not been granted ... as provided in section four, shall be punished...."
[6] This heading, inserted by St. 1962, c. 616, § 2, precedes G.L.c. 136, § 5.