## DAVID MILLER *vs.* JOHN BAKER 2D.

Where, at the first trial of a cause, a party sets up a conveyance as a mortgage, and it is decided that such conveyance is absolute, he is not estopped to rely on it as absolute, at a second trial.

Trespass *de bonis asportatis* is maintained by proof that the defendant unlawfully exercised an authority over the chattels, against the will and to the exclusion of the owner, though there was no manual taking or removal.

Trees and shrubs, in land demised to be used as a nursery garden, are personal chattels, as between the lessor and the lessee and his assigns, and may be severed and removed.

TRESPASS against the sheriff of Norfolk for taking, by one of his deputies, nursery trees, shrubs, and plants, and converting

them to his own use. On the trial of the general issue, before *Wilde*, J., the plaintiff claimed title to this property under an instrument executed by Charles Senior, dated October 3d, 1834 ; and he proved actual delivery, and his possession thereof. The land, in which said trees, &c. were growing, had been demised to Senior, to be occupied for the purpose of a nursery garden, &c. At a former trial of this action, (20 Pick. 285,) said instrument was produced by the plaintiff as a mortgage, and shown to have been recorded in the office of the clerk of the town of Roxbury. The judge who presided at that trial ruled that it was a mortgage ; but the whole court, on a reservation of the question at the defendant's motion, decided otherwise. At the last trial, the defendant insisted that the plaintiff was estopped by his former course of proceeding, to set up the instrument as an absolute sale ; but the judge ruled that the plaintiff was not thus estopped.

It was proved that a writ in favor of Sumner & Williams against Senior was put into the hands of a deputy of the defendant, who returned that he had attached the property in question. It was also testified by the person appointed, by said deputy, keeper of said property, that he was directed to keep all the property in the green-house and garden, and not to permit any one to remove it, and that he did keep the same thirteen days, and then delivered it to the attaching creditors of Senior, by order of the deputy sheriff who served the writ.

The judge ruled that this was *primâ facie* evidence of a taking and conversion ; to which ruling the defendant excepted. A portion of the shrubs and plants in question were proved to have been in pots, boxes, &c. in a green-house, and others, like the nursery trees, rooted or inserted in the soil. The question was reserved whether damages for taking and converting trees, shrubs, and plants rooted in the soil of a nursery garden, for the purpose of being taken up and sent to market in the spring and autumn of each year, can be recovered in this form of action.

A verdict for the plaintiff was taken, so as to separate the damages given for the green-house and pot plants from those

rooted in the soil, and is to be sustained, or set aside, wholly or in part, as the court shall order.

*S. D. Parker,* for the defendant. Trespass will not lie against the defendant, because there was no removal, conversion, or taking. *Albee v. Ward,* 8 Mass. 79. *Hayden v. Shed,* 11 Mass. 500. *Broughton v. Whallon,* 8 Wend. 474.

This action does not lie for trees, &c. inserted in the soil and not severed. They are part of the realty. *Lee v. Risdon,* 7 Taunt. 191. *Herlakenden's case,* 4 Co. 62. *The Queen v. Harris,* 11 Mod. 113, 121. *Emmerson v. Annison,* 1 Mod 89. 4 Bl. Com. 233.

The plaintiff was estopped to set up the conveyance to him as an absolute sale, after having relied upon it as a mortgage.

*D. A. Simmons,* for the plaintiff. The evidence shows that there was such an interference with the property, and such a control of it as amounts in law to a taking and conversion. *Gibbs v. Chase,* 10 Mass. 128.

Nursery trees are personal property. *Penton v. Robart,* 2 East, 90. *Wyndham v. Way,* 4 Taunt. 316.

The plaintiff cannot be estopped to assert his conveyance to be such as the court has decided it to be.

DEWEY, J. That trespass *de bonis asportatis* is a proper form of action where the owner of personal chattels seeks to recover against the sheriff damages for the illegal act of his deputy, in taking such chattels under color of process of law and by virtue of his office, is too well settled to admit of a question. Whether the facts here disclosed show such illegal taking of personal chattels of the plaintiff as will authorize him to recover in this action, properly opens the inquiry into all the circumstances as shown by the evidence offered in the case.

The title of the plaintiff was derived from one Charles Senior, under an instrument executed by Senior conveying to the plaintiff the property in controversy, which instrument the plaintiff contended was in its legal effect an absolute bill of sale and effectual as such to pass the property to him. The defendant on the present trial insisted that the plaintiff was estopped from setting up this instrument as an absolute sale, inasmuch as he

3 *

Miller *v.* Baker.

had, on a former trial of the same cause, offered it as a mortgage and insisted that such was its legal effect. It is not controverted on the other side, that the plaintiff did so offer it, and did insist in the argument of the case before the full court that such was its character ; but it is said that this court, after a full hearing upon that question, (20 Pick. 285,) decided that the instrument was not a mortgage but an absolute bill of sale ; a decision less favorable to the plaintiff than an adjudication that it was a mortgage ; as in the former case evidence of a delivery of the property was requisite, but in the latter it would be effectual to pass the property upon proof that it had been duly recorded. It is very difficult for us to perceive upon what possible ground this objection can be supposed tenable. That upon a new trial being granted for the very reason that the instrument had on the former trial been offered as a mortgage, and was so considered for the purposes of the trial, and upon its being sent to another jury with the sole view of submitting the question of the rights of the parties under such decision of the court, the party should be estopped from offering the instrument as one of precisely the character the court had decided it to be, solely because he had previously erroneously insisted upon another construction of the instrument, would seem to be carrying the doctrine of estoppels quite too far, certainly much further than either the principles of law or good sense would justify.

This instrument was therefore properly submitted to the jury as an absolute conveyance, and upon proper proof of its being made *bonâ fide* and with good consideration, and accompanied with delivery of the property, it was sufficient to authorize the jury to find that the property was legally in the plaintiff.

Nor is there any doubt that the acts done by the servant of the defendant would constitute a trespass, as to the personal chattels of the plaintiff. A forcible taking of goods is not necessary to enable the owner to maintain trespass. On a similar question in *Gibbs* v. *Chase*, 10 Mass. 128, *Sewall*, J. says, "No actual force is necessary to be proved. He who interferes with my goods, and without delivery by me, and without my consent, undertakes to dispose of them as having the property .

general or special, does it at his peril to answer me the value in trespass or trover." It is sufficient to maintain trespass, if the party exercises an authority over the goods against the will and to the exclusion of the owner by an unlawful intermeddling, though there be no manual taking or removal. *Wintringham* v. *Lafoy,* 7 Cow. 735. *Phillips* v. *Hall,* 8 Wend. 610.

In the present case there was not only an attachment of the property, but the placing of a keeper over it with directions to permit no one to remove the same, and an entry and exclusive possession by the keeper. It seems, therefore, that as to so much of the property in controversy as is conceded to be personal chattels, the case is clearly with the plaintiff.

The question whether the fruit trees, shrubs, and plants, rooted in the soil of the nursery garden, can be properly denominated personal chattels, and as such be embraced in the present action, is attended with more difficulty. Questions as to what is personal estate and what appertains to the realty have more usually arisen in cases of conflicting claims between the heir and the executor or administrator, or between landlord and tenant, and these have been not unfrequently cases of much nicety in properly applying the principles of law. As respects the cases between landlord and tenant, the leaning of the courts in modern times has been to give a rather liberal construction in favor of the right of the tenant to remove property placed by him upon the land.

Taking the question restricted to the case before us, it seems to us that the plaintiff is entitled to retain his verdict for the entire damages found by the jury, as well for the plants and trees rooted in the soil, as for the green-house and pot plants. The plaintiff acquired by his bill of sale the interest of Senior in the fruit trees, shrubs, and plants rooted in the soil, to the same extent that he enjoyed it. What was the interest of Senior, and what were his rights, as to this species of property? He was in the occupation of the land, in the soil of which these trees and plants were growing, as a nursery garden, by the consent of the owner of the land, and occupying the land for this special object. The permission to occupy the land for a nursery garden was necessa-

rily a permission to cultivate these productions for the purpose of sale and transfer, at pleasure, to other places. The products of this garden may, therefore, as regards the interest of Senior, be well considered to be articles of trade and sale, and the right to remove them from time to time would seem to be unquesticnable. The case of a purchaser under Senior of certain fruit trees and plants, acquiring a title only to the trees and plants, and the use of soil for their nourishment, without the right of general occupation of the nursery grounds for a nursery, may present perhaps a still clearer case of personal chattels.

Whether such articles might be lawfully taken on attachment against the owner, and removed by the attaching officer, is a question we do not decide. Difficulties may arise in the exercise of this power, from the peculiar nature of the property and the injury which might result, if they were removed at an improper season, or kept from the earth an unsuitable length of time. Whether they might be attached, without an actual seizure and taking possession, being considered as falling within a class of personal property that cannot easily be removed, (as buildings erected on the land of another,) may also be a subject for consideration in some future case.

The plaintiff had the right of removal of these products; they were to him articles of trade and merchandize, and the right to cultivate them, for the purpose of removal, was the extent of his interest in the nursery garden; and having this species of property, and this restricted interest in the soil, we think he may be allowed to treat them as personal chattels, and to recover their value as against a wrongdoer who should be guilty of a conversion of them, by taking them into his possession and excluding the owner from the lawful exercise of his rights over them. The reported cases to which we were referred by the counsel, do not furnish any direct adjudication upon the point we have been considering.

In the case of *Penton* v. *Robart,* 2 East, 88, wheie the immediate question was the right of the tenant to take down and remove certain buildings erected by him on the demised premises, Lord *Kenyon,* in delivering his opinion, seems to counte·

nance the view we have taken of this subject. In commenting upon the rule as to fixtures, he asks, " Shall it be said that the great gardeners and nurserymen in the neighbourhood of London, who expend thousands of pounds in the erection of greenhouses and hothouses, &c., are obliged to leave all these things on the premises, when it is notorious that they are even permitted to remove trees, or such as are likely to become such, by the thousand, in the necessary course of their trade. If it were otherwise, the very object of their holding would be defeated. This is a description of property divided from the realty."

In *Wyndham* v. *Way,* 4 Taunt. 316, *Heath,* J. suggests the same view as to the right of a tenant, who is a nurseryman by trade, to remove fruit trees. Indeed this right, I suppose, can hardly be questioned; but the doubt, if any, arises as to the nature of this property while the trees and shrubs are connected with the soil, and before removal. Upon this latter point, it is proper to remark that *Gibbs,* C. J., in *Lee* v. *Risdon* 7 Taunt. 191, in discussing the more general question of fixtures, says that trees in a nursery ground are a part of the freehold until severed. And no doubt this is true as between the heir and executor, and would be so also where the entire property in the land and in the trees growing thereon is united in the same person. But we apprehend, in a case like the present, where the owner of the trees had no permanent interest in the soil, but was, at most, using it for the mere purpose of nourishing and sustaining his trees until the proper period should arrive for their removal, the interest in the trees may be considered as separated from the realty, and they may well be denominated personal chattels, and for the wrongful taking and conversion of them by a stranger, the owner may maintain an action of trespass *de bonis asportatis.*

*Judgment on the verdict.*