## HECHINGER COMPANY *v.* STATE'S ATTORNEY FOR PRINCE GEORGE'S COUNTY

[No. 390, September Term, 1973.]

*Decided January 11, 1974.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Victor L. Crawford* and *Benny L. Kass* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Charles P. Strong, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Md. Ann. Code Art. 27, § 534H provides in pertinent part:

"(a) In Prince George's County, except as specifically in this section otherwise provided, it is unlawful on Sunday for any wholesale or retail establishment to conduct business for labor or profit in the usual manner and location or to operate its establishment in any manner for the general public. It shall not cause, direct, permit, or authorize any employee or agent to engage in or conduct business on its behalf on Sunday.

\* \* \*

(c) Nothing in this section applies to:
1. Farmers
2. Nurserymen"

In this appeal we are asked to hold that the appellant, Hechinger Company, is a nurseryman within the meaning of Md. Ann. Code Art. 27, § 534H, and if it is not, then to toll the death knell for § 534H (c) 2. on the ground that it is void for vagueness. We shall do neither for the reasons hereinafter set forth.

On June 13, 1973 the State's Attorney for Prince George's County, Maryland, pursuant to Md. Ann. Code Art. 27, § 534H (i) filed a petition in which he sought an injunction against Hechinger. The basis for the requested relief was that Hechinger had conducted "a retail hardware sales business on Sunday, June 3, 1973, in Prince George's County . . . employing more than six employees . . ." and therefore was in violation of the "Sunday Blue Laws".

On June 22, 1973 Judge Perry G. Bowen conducted the trial on the merits of the petition for relief. The State relied primarily upon the testimony of Sergeant Robert R. Ross of the Prince George's County Police Department. Sergeant Ross testified that at approximately 10:20 A.M. on Sunday, June 3, 1973 he went to the Hechinger store located at 4444 Branch Avenue, Marlow Heights, where he observed an estimated seventy-five customers and twenty-four

salespersons. Ross said that he thought only a small percentage of the seventy-five customers and "five or six" salespersons were in the floor space in which garden supplies were sold. The cash registers were located at the "main entrance" to the store. Sergeant Ross enumerated a number of items that he had observed to be for sale in the store. Those items included iceboxes, washing machines, stoves, building materials, appliances, lawn furniture, swimming pool accessories, hand tools, power tools, shrubs, barbecue grills, hibachis, paint, door frames, windows, picnic supplies, evergreen trees, charcoal, chemicals and insecticides for lawn care, decorative bark, stones, brick, fertilizer, garden carts, fountains, lawn sweepers, hand and power mowers, hoses, sprayers, spreaders, as well as other products. Ross opined that less than one-fourth of the total floor space was devoted to the display of the garden items.

The principal defense to the equity proceeding was that appellant, Hechinger, is a nurseryman. In support of that defense the appellant offered the testimony of its president, John W. Hechinger. Mr. Hechinger stated that the items sold by his company would be sold by the normal nursery. He was referred by his counsel to an article entitled "Green and Growing Market." The witness read from the list of products that a "well stocked nursery should have in order to compete." [1] The appellant's store sold "220 different items of growing stock", and its employees have received training in "grass and lawn products." Furthermore, the employees are visited by a consultant "two or three times a year . . . [who] hold[s] . . . seminars . . . for [the purpose of] answering questions of the salesmen." Mr. Hechinger said that the

---

1. The following is a list of the items that Mr. Hechinger testified are necessary to compete in a nursery business: barbecue grills, hibachis, charcoal, birdhouses, chemicals, insecticides, decorative bark, stones, brick, fencing, fertilizers, flower tubs, boxes, pots, fountains, furniture (metal and/or wood), garden carts, gloves, grass catchers, shrubs, rose bushes, flats, bulbs, hammocks, hand tools, shovels, hoes, rakes, spades, weeders, forks, shears, pruners, clippers, loppers, trowels, hoses, sprinklers, nozzles, sprinkling cans, insect foggers, lawn sweepers, patio stones, blocks, peat moss, "all other soil conditioners", power tools, saws, edgers, trimmers, tillers, grass seed, flower seed, vegetable plant seed, sprayers, spreaders, statuary, storage buildings, trellises, wheelbarrows, patio decking, plastic pipes, cement, sand, drain tile, creosote, and sod.

questions put by the salesmen to the consultant were concerned with "the care and feeding of plants, especially the planting instructions, because we give . . . a very strong guarantee . . . ." According to the witness his store sold most of the goods that a well stocked nursery or hardware store would offer for sale. Appellant also sold lumberyard items, but those products were "directed toward the home rather than the trade." It was developed in the testimony that the Hechinger slogan is "the world's most unusual lumberyard." The appellant's president testified that on June 3, 1973 all of the departments of the store were in operation and not just the garden section.

On the record before us, we are unable to determine the principal business of the appellant. While the store is departmentalized, no business records were offered demonstrating the percentage of business transacted by any particular department. Mr. Hechinger did state that approximately one-third of the floor space was devoted to the garden aspect of the business and that the sales were "substantial, probably close to 50 percent."

In this Court the appellant argues that it "offers more than 220 varieties of growing stock for public purchase. And common sense tells us that in order to stock such growing items . . . [appellant] would have to water and fertilize the plants periodically," in order to sell "good and healthy merchandise." Appellant utilizes the quoted statement as a premise upon which it grounds a conclusion that because it fertilizes and waters plants in order to sell them, it is in the business of "raising" plants for sale and thus is a nurseryman. We decline to adopt the appellant's line of reasoning.

The word "nurseryman" is defined in *Webster's Third New International Dictionary of the English Language* (unabr. ed. 1967) as, "one whose occupation is the scientific cultivation of trees, shrubs and plants." [2] A nursery is

---

**2.** Similar definitions are found in *Funk and Wagnall's Standard College Dictionary,* Text Edition (1963); *The American Heritage Dictionary of the English Language* (1969); 67 C.J.S. *Nursery* 3 (1950).

defined by the same source to mean "an area where trees, shrubs or plants are grown for transplanting, for use as stocks for budding and grafting, or for sale."

In *Town of Needham v. Winslow Nurseries*, 330 Mass. 95, 100, 111 N.E.2d 453, 456 (1953), the Supreme Judicial Court of Massachusetts said:

> "According to dictionary definition a nursery is a place where trees, shrubs, plants, and so forth, are propagated from seed or otherwise for transplanting, for use as stock for grafting, and for sale. *See Miethke v. Pierce County*, 173 Wash. 381, 23 P.2d 405 [(1933)]; *Attorney General v. State Board of Judges*, 38 Cal. 291, 296 [(1869)]; *Miller v. Baker*, [42 Mass. (1 Met.) 27 (1840)]; *Whitmarsh v. Walker*, [42 Mass. (1 Met.) 313 (1840)]; *Paine v. Board of Assessors of Town of Weston*, 297 Mass. 173, 7 N.E.2d 584 [(1937)]."

Appellant cites us to a series of cases in which courts have been called upon to consider what does and does not constitute a nursery business. The first such case, *A.C. Nurseries, Inc. v. Brady*, 278 App. Div. 974, 105 N.Y.S.2d 933 (1951) is of no help to appellant, as that case merely notes that a nursery was a permitted non-conforming use under the City of Yonkers zoning ordinance. *Town of Needham v. Winslow Nurseries, supra*, also involved a local zoning ordinance, and it is factually inapposite to the instant case. *Anderson v. Humble Oil and Refining Company*, 226 Ga. 252, 174 S.E.2d 415 (1970) is concerned solely with a question arising under the zoning laws of Fayette County, Georgia. The issue there involved was whether or not a nursery was properly zoned as "commercial" or "agricultural".

That the employees of the appellant water and fertilize the plants and shrubs that are part of the appellant's inventory, does not in our view place the appellant within the ambit of the definition of nurserymen.

We think the appellant was conducting a retail business and not, as the word is ordinarily and naturally used, a nursery. *Ergo*, appellant is not a nurseryman. If we were to

adopt the argument urged upon us by the appellant we would in effect authorize every *bona fide* nurseryman in Prince George's County to engage in a retail business enterprise similar to that of the appellant. Nurserymen could then, under the guise of their statutory exemption, undertake to sell, on Sunday, the diverse and sundry items offered for sale by the appellant.

The word *nurserymen* as used in Art. 27, § 534H (c) 2 is not void for vagueness, but on the contrary is clearly definitive. We cannot disregard the natural meaning of the statutory language "unless some imperative reason is found in the statute for enlarging or restricting its meaning." *Giant of Md. v. State's Attorney*, 267 Md. 501, 511, 298 A. 2d 427, 433 (1973). No such "imperative reason" is presented in the instant case. We confine ourselves to the construction of the statute as it was enacted by the General Assembly, and we conclude that the statutory language is plain, crystalline and unambiguous.

Appellant also contends that because it was inspected, pursuant to Md. Ann. Code Art. 48, § 79, by a representative of the Secretary of Agriculture for the State of Maryland, that they had a "right to rely on their status as a nursery." Their reliance upon the cited code provision is misplaced. Md. Ann. Code Art. 48, § 79 provides in pertinent part:

"The Secretary of Agriculture shall inspect at least once in every six (6) months all nurseries of trees, vines, shrubs, and plants subject to the aforesaid insects or diseases within the State, and if found free, so far as can be determined by inspection, from the aforesaid insects or disease to give to the owner or owners or persons in charge of said nurseries a certificate of inspection showing such nurseries or premises to be apparently free from such insects and diseases . . . . *No nurseryman, broker, agent, dealer or other person shall be permitted to sell, ship, send out, or give away, by mail, express, freight or otherwise, any trees, vines, shrubs, plants, buds or cuttings from any such nurseries or premises, without*

*accompanying the same, with a copy of the said certificate . . . .*[3]" (Emphasis supplied).

It is apparent that the Code not only requires the inspection of "nurseries of trees, vines, shrubs, and plants", but also mandates that a "broker, agent, dealer or other person" shall not be permitted to trade or deal in trees, vines, plants and shrubs unless the items have been inspected as required by law. The statute thus confers upon the Secretary of Agriculture the duty, not only to inspect nurseries, but to assure that other persons engaged in the sale of the specified items are also complying with the terms of the act. The inspection of the appellant's stock-in-trade of plants, vines, trees and shrubs by the Secretary does not transform the appellant's obvious retail store into a nursery.

*Judgment affirmed.*
*Costs to be paid by the appellant.*

---

3. Md. Ann. Code Art. 48, § 80 provides that a violation of § 79 shall be punished by a fine of "not less than ten dollars ($10) nor more than one hundred dollars ($100) and costs of prosecution for each and every offense . . . ."