# HECHINGER COMPANY v. STATE'S ATTORNEY FOR PRINCE GEORGE'S COUNTY

[No. 31, September Term, 1974.]

*Decided October 25, 1974.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Victor L. Crawford,* with whom were *Crawford & Goldberg* on the brief, and *Benny L. Kass,* with whom were *Boasberg, Hewes, Klores & Kass* on the brief, for appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General,*

with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court. O'DONNELL, J., concurs in the result and filed a concurring opinion at page 713 *infra.*

This rounds out a trilogy of recent cases involving Sunday closing laws, two in Prince George's County, one in Montgomery County. In *Giant of Maryland, Inc. v. State's Attorney for Prince George's County,* 267 Md. 501, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915 (1973) we held that the Sunday closing law applicable to Prince George's County, Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 534H (b) 1-3 did not permit Giant to avail itself of the exemption accorded drugstores, delicatessens and bakeries, because although Giant operated a pharmacy, a delicatessen and a bakery within its store, its business was the general sale of food products.

The second case, *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 320 A. 2d 266 (1974), involved the interpretation of a similar Sunday closing law, Code (1957, 1971 Repl. Vol.) Art. 27, § 534J applicable to Montgomery County. The same Hechinger Company (Hechinger) which is the appellant here had instituted an action for declaratory and injunctive relief in the Circuit Court for Montgomery County against Dart Drug Corporation, Drug Fair, Inc. and Peoples Drug Stores, Inc., alleging that the defendants' stores, which sold 67% of the same items sold by Hechinger, were permitted to remain open on Sunday, while Hechinger was required to be closed. In that case, we found that the three defendants did not qualify for the statutory exemption accorded to "[d]rugstores whose basic business is the sale of drugs and related items" because their basic business was not the sale of drugs. We modified the trial court's order, and affirmed as modified a declaration and order enjoining and restraining the defendants from conducting business on Sunday in any store which regularly employed on weekdays more than six persons on any one shift.

This case began in June of 1973 when the State's Attorney filed a petition for injunctive relief against Hechinger in the Circuit Court for Prince George's County, seeking to enforce the same Sunday closing law which had been at issue in *Giant of Maryland, Inc. v. State's Attorney for Prince George's County, supra,* 267 Md. 501. From a decree granting injunctive relief, Hechinger appealed to the Court of Special Appeals which affirmed in *Hechinger Co. v. State's Attorney for Prince George's County,* 19 Md. App. 707, 313 A. 2d 715 (1974). We granted certiorari.

Code (1957, 1971 Repl. Vol.) Art. 27, § 534H (the Statute) which is at issue here, provides in part:

"(a) In Prince George's County, except as specifically in this section otherwise provided, it is unlawful on Sunday for any wholesale or retail establishment to conduct business for labor or profit in the usual manner and location or to operate its establishment in any manner for the general public. It shall not cause, direct, permit, or authorize any employee or agent to engage in or conduct business on its behalf on Sunday."

\* \* \*

"(c) Nothing in this section applies to:
1. Farmers
2. Nurserymen
3. Small business with not more than six (6) persons on any one shift with the exception of persons or retailers engaged in the sale of motor vehicles." [1]

Hechinger, which advertises as "The World's Most Unusual Lumber Yards" operates two stores in Prince George's County: one at Marlow Heights and one at Prince George's Plaza Shopping Center, near Hyattsville. In *Dart*

---

1. Chapter 384 of the Laws of 1974, effective 1 July 1974 amended § 534H (c) 3, so that it now reads: "Any business with not more than six persons on any one shift on Sunday with the exception of persons or retailers engaged in the sale of motor vehicles." A similar change was made in § 534J (c) 3, applicable to Montgomery County.

*Drug Corp. v. Hechinger Co., supra,* 272 Md. at 18-19, Hechinger's president described his company as being "in the lumber, hardware and general merchandise business" or, alternatively, as being in the "home center business."

Sergeant Robert R. Ross, of the Prince George's County police department, testified that on the morning of Sunday, 3 June 1973, he visited the Hechinger store at Marlow Heights. He found some 75 customers and 24 employees in the store. From Ross' testimony can be culled the items he saw for sale in the store. They included: building materials, appliances, lawn furniture, shrubbery, evergreen trees, swimming pool accessories, machine tools, windows, door frames, paint, hardware supplies, iceboxes, washing machines, stoves, barbecue grills, hibachis, charcoal, picnic supplies, chemicals, insecticides, decorative bark, stones, fencing, fertilizers, flower tubs, boxes, pots, garden carts, hand tools, hoses, lawn sweepers and mowers, sprayers, spreaders, storage buildings, plastic pipe. In response to a question, Ross estimated that less than one fourth of the store was devoted to garden related items (as distinguished from nursery stock, most of which was displayed outside) and that five or six employees were in that area.

At the conclusion of Ross' testimony, it was stipulated that Hechinger's Hyattsville store, also open on that day, was not substantially different. The only other witness was John W. Hechinger, the company's president, who testified for the defendant.

Hechinger said that his company sold some 220 items of growing stock, including evergreens, roses, flowering shrubs, fruit trees, annuals and bedding plants; that in the last 3 years about 100 employees had attended a course in lawn care given by the O. M. Scott Company in Marysville, Ohio, and that the outside area where most of the nursery stock was sold occupied an area about one third the size of the store. It was Mr. Hechinger's opinion that approximately 50% of his company's sales were derived from what he regarded as nursery related items, which included barbecue grills, hibachis, charcoal, birdhouses, chemicals, insecticides,

decorative bark, stones, brick, fencing, fertilizers, flower tubs, boxes, pots, fountains, furniture (metal and/or wood), garden carts, gloves, grass catchers, shrubs, rosebushes, flats, bulbs, hammocks, hand tools, shovels, hoes, rakes, spades, weeders, forks, shears, pruners, clippers, loppers, trowels, hoses, sprinklers, nozzles, sprinkling cans, insect foggers, lawn sweepers, patio stones, blocks, peat moss, "all other soil conditioners," power tools, saws, edgers, trimmers, tillers, grass seed, flower seed, vegetable plant seed, sprayers, spreaders, statuary, storage buildings, trellises, wheelbarrows, patio decking, plastic pipes, cement, sand, drain tile, creosote, and sod.

On cross examination, Mr. Hechinger further explained his answer by saying that his company's sales are about equally divided between items used inside the house and items used outside the house. No evidence of sales figures by categories was introduced.

Hechinger challenges the result reached by the trial court and affirmed by the Court of Special Appeals on the ground that it was posited on a narrow definition of a nursery as a place where plant life is propagated, with the natural consequence that a nurseryman, within the contemplation of Art. 27, § 534H (c) 2 is the operator of just such a nursery.[2]

Hechinger, relying on determinations reached in the context of zoning law, *Anderson v. Humble Oil & Refining Co.*, 226 Ga. 252, 174 S.E.2d 415 (1970); *Suburbia Gardens Nursery, Inc. v. County of St. Louis*, 377 S.W.2d 266 (Mo. 1964); *Town of Needham v. Winslow Nurseries, Inc.*, 330 Mass. 95, 111 N.E.2d 453 (1953) and *A. C. Nurseries, Inc. v. Brady*, 278 App. Div. 974, 105 N.Y.S.2d 933 (1951), *see* 67 C.J.S. *Nursery* (1950, Supp. 1974), would have us hold that we should give a broader scope than did the chancellor or the Court of Special Appeals to the term nurseryman as used in

---

2. Webster's New International Dictionary of the English Language 1674, 1675 (2d ed. 1944) defines a nursery as "[a] place where trees, shrubs, vines, etc., are propagated for transplanting or for use as stocks for grafting; a plantation of young trees or other plants" and a nurseryman as "[o]ne who conducts or cultivates a nursery." This was the test applied by the older cases, collected in 67 C.J.S. *Nursery* at 2-3 (1950).

the Statute. Although we are fully prepared to do this, it will be of little comfort to Hechinger, since in our view a correct result was reached below, but for what we regard as the wrong reason.

Turning to the question of statutory construction, it should be noted that the Statute was last before the General Assembly in 1969, when it was amended by Chapters 277 and 282 of the Laws of 1969.[3] By then, the legislature must have had in mind the situation which had developed in the metropolitan areas of Baltimore and Washington, where many nurserymen customarily offered for sale plant material which had been propagated and raised elsewhere, either by the seller or by others. It is too late in the day to argue that the exemption extended by the Statute to nurserymen may be availed of only by the propagator and grower of plant materials, since the Statute must be construed in the light of customs and usages existing at the time of its enactment or amendment, *Town of Needham v. Winslow Nurseries, Inc., supra,* 330 Mass. at 99, 111 N.E.2d at 455-56; *cf. Williams v. Loyola College,* 257 Md. 316, 328, 263 A. 2d 5, 11 (1970); 2A C. Sands, Sutherland Statutory Construction § 47.28, at 141-42 (4th ed. 1973).

Even this concession, however, affords no solace to Hechinger, because Hechinger, on the facts before us, can no more be regarded as a nurseryman than the wide ranging operations of Giant Food or Dart Drug could be regarded as those of a drugstore, for purposes of the Sunday closing laws.[4] The record clearly shows that while Hechinger may not be a lumberyard, its business is that of a seller of a wide range of general merchandise. Even if we apply Mr. Hechinger's somewhat amorphous inside/outside test it is clear that products sold for use outside the home, by his definition, include much more than plant materials and nursery related items — such as insecticides, fertilizers,

---

3. Excepting, of course, Chapter 384 of the Laws of 1974 which became effective long after this case had been instituted.

4. *See* Giant of Maryland v. State's Attorney for Prince George's County, 267 Md. 501, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915 (1973); Dart Drug Corp. v. Hechinger Co., 272 Md. 15, 320 A. 2d 266 (1974).

peat moss, mulch, potting soil, pots, seeds, bulbs, house plants, small hand tools, and the like, all of which are customarily sold by nurseries in the Washington metropolitan area. *Town of Needham v. Winslow Nurseries, Inc., supra,* on which Hechinger relies, recognized at 101-02 of 330 Mass. and at 457 of 111 N.E.2d that nursery stock not grown on the premises may be sold by a nursery, but held that sales of items other than "fungicides, insecticides, chemicals, peat moss, humus, mulches, and fertilizers" were not incidental to the operation of a nursery, a permitted use in an area zoned residential. *See also Suburbia Gardens Nursery, Inc. v. County of St. Louis, supra,* 377 S.W.2d at 272-73. Difficult as it may be on the record before us to characterize Hechinger's principal business, which may well be that of a home center, of a hardware store, of an appliance store, or of a retail lumber dealer, it is certainly not that of a nursery.

There were introduced in evidence photographs of other nursery operations which, according to Mr. Hechinger, were open on Sunday. Two of them were adjuncts to department stores, which were otherwise closed. A third was at a hardware store, which seemingly operated with six or fewer employees. Another was a nursery which, as far as we could ascertain from the photographs, sold only nursery related items.

Hechinger's second contention is that the Statute is so vague, ambiguous, uncertain and insusceptible of definition as to amount to a denial of due process. We have recognized that due process is violated only when a statute is so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application, *MacLeod v. City of Takoma Park,* 257 Md. 477, 481, 263 A. 2d 581, 583 (1970). The compelling answer to this contention is that the same argument was made as regards the same statute in *Giant of Maryland v. State's Attorney for Prince George's County, supra,* 267 Md. at 514-15, where we said:

"But the imperfect drafting of § 534H does not compel a holding that the statute is vague and

indefinite in a constitutional sense, as urged by Giant. On the contrary, bearing in mind that § 534H is a penal statute, we think that, as written, it is sufficiently explicit to enable a person of ordinary intelligence to ascertain with a fair degree of precision what it prohibits and what conduct on his part will render him liable to its penalties; it does not, therefore, affront the constitutional guarantees of due process."

*See also Rebe v. State's Attorney for Prince George's County,* 262 Md. 350, 277 A. 2d 616 (1971).

Because we regard the result reached below as the right one, we shall affirm.

> *Judgment affirmed; stay order vacated; costs to be paid by appellant.*

*O'Donnell, J., concurring:*

I concur with the result reached by the majority, but I would sustain the grant of injunctive relief upon the more restricted ground that the appellant, Hechinger Company, is not within the exception set forth in the Maryland Code (1957, 1971 Repl. Vol.), Art. 27, § 534 H (c) (2), in that none of the merchandise sold by it brings it within the definition of a "nurseryman" as that term is known and defined. I cannot concur that in 1968 when the General Assembly enacted that section, nor in 1969 when the "Sabbath breaking" statute was last before it, that the legislature "must have had in mind the situation which had developed in the metropolitan areas of Baltimore and Washington, where many nurserymen customarily offered for sale plant material which had been propagated and raised elsewhere, either by the seller or by others." Nor do I concur with the view that "[i]t is too late in the day to argue that the exemption extended by the Statute to nurserymen may be availed of only by the propagator and grower of plant materials."

What the majority seems to suggest is that if the appellant is selling at retail upon his premises baled, balled

or potted trees, bushes, plants and flowers — though purchased at wholesale elsewhere from the propagator and grower of such plant materials — and sells as well only nursery-related items, that the appellant would thus be a "nurseryman" and within the exemption in the statute. The majority then concludes that because of the adjunct retail sales by the appellant of non-nursery-related items and a wide range of general merchandise, it is not the operator of a nursery.

The first reference to any such kindred exemption appears in the Code (1957, 1967 Repl. Vol.) Art. 27, § 521 (b) — a codification of Ch. 811 of the Acts of 1959 — which permitted the sale on Sunday in Anne Arundel County of "artificial and natural flowers and shrubs" together with other specified limited merchandise. Subsection (f) in the same section — a codification of Ch. 236 of the Acts of 1966 — excepted from the application of the "Sabbath breaking" statute the operation in Allegany County of certain retail establishments, included among which were *"nurseries or shops selling flowers and plants, or roadside vending stands selling* fruits, vegetables or *plants and flowers"* — provided that during the entire time such establishment was open on a Sunday, not more than three (3) persons were employed or working. (Emphasis supplied.)

The exception here in issue, set forth in Art. 27, § 534 H (c), as applicable to Prince George's County, was enacted by Ch. 421 of the Acts of 1968. The same subsection, identical in form and content and codified as Art. 27, § 534 J (c), as applicable to Montgomery County, was enacted by Ch. 630 of the Acts of 1968. The same exceptions, now codified as Art. 27, § 534 L (c), was enacted by Ch. 686 of the Acts of 1968, as applicable to Baltimore County. The following year by Ch. 764 of the Acts of 1969, the General Assembly enacted identical exceptions, now codified as Art. 27, § 534 M (c), for Harford and Wicomico Counties.

By Chapters 343, 681 and 718 of the Acts of 1973, the identical provisions as are contained in Art. 27, § 534 H (c), were similarly enacted as applicable respectively to Anne Arundel and Calvert Counties (Art. 27, § 534N), Washington

County (Art. 27, § 534O), and Frederick County (Art. 27, § 534Q). By comparison, Ch. 744 of the Acts of 1973, codified as § 534R, in subsection (c)(3) exempts as "types of business" "agricultural activities including florists, nurserymen and farmers, and commercial fishing" for Harford County.[1]

Each of those respective sections in Art. 27 provides in subsection (b) thereof:

> "Notwithstanding any provision of this section, the operation of any of the following types of retail establishments is allowed on Sunday:
> 1. Drug stores whose principal business is the sale of drugs and related items.
> 2. Delicatessens whose principal business is the sale of delicatessen and related food items.
> 3. Bakeries and bakeshops.
> 4. Gasoline stations whose principal business is the sale of gasoline, oil, and other automobile maintenance items."[2]

The majority, by their interpretation of "nurserymen," have in effect added an additional classification to subsection (b) in Art. 27, § 534H, which in effect would read "Stores whose principal business is the sale of trees, shrubs, plants and flowers, and nursery-related items." Such classification and exemption was not created by the General Assembly; rather it chose to use the limited term "nurserymen." It could have exempted "Nurseries or shops selling flowers and plants," as was done by Ch. 811 of the Acts of 1959, for Anne Arundel County, but it did not. When the classification "nurserymen" was used in the respective statutes applicable to the various counties that word had a plain and definite meaning and as such is limited, as the

---

1. Ch. 744 of the Acts of 1973 re-enacted § 534M for Wicomico County and eliminated all references in that section to Harford County; it enacted a new section, § 534R applicable solely to Harford County.

2. Art. 27, §§ 534M, N and Q include within subsection (b) as (5), "Restaurants, grills and snack bars," as does § 534L, as amended by Ch. 265 of the Acts of 1973. Art. 27, § 534O (for Washington County) includes within subsection (b) as (5), "Restaurants, ice cream parlors, snack bars and grills," and adds (6), "Antique shops."

majority recognizes, to " '[o]ne who conducts or cultivates a nursery,' " and according to the dictionary definitions, a nursery "is a place where trees, shrubs, plants, and so forth, are propagated from seed or otherwise for transplanting, for use as stock for grafting and for sale."[3] *See Piekos v. Bachand*, 333 Mass. 211, 129 N.E.2d 890 (1955), quoting with approval that same definition set forth in *Town of Needham v. Winslow Nurseries, Inc.*, 330 Mass. 95, 111 N.E.2d 453 (1953). *See also Suburbia Gardens Nursery, Inc. v. County of St. Louis*, 377 S.W.2d 266 (Mo. 1964); 67 C.J.S. *Nursery* (1950, Supp. 1974); and 58 Am.Jur.2d *Occupations, Trades and Professions* § 1 (1971) (concerning the regulation of "nurserymen").

The Chancellor (Bowen, J.) — of no little experience with agronomy — in holding that the appellant was not a "nurseryman," succinctly stated:

"A nurseryman is by definition one who conducts or operates a nursery, . . . but we are talking about here nursery in the agricultural sense. That, we think, is not difficult to glean because nurseryman follows right after farmers, [by statutory arrangement] which is the first one, so if by nothing else in the statute by the arrangement we apprehend they are talking about nursery in the sense as it applies to agriculture as opposed to any other kind of nursery you find in the dictionary. Now a nursery is by definition an operation which concerns itself with propagation of plant material, or with the propagation of certain forms of animal life. We hold as a matter of fact that that is the definition intended by the statute, none other having been offered in the statute; that it is as a matter of fact susceptible of precise and exact definition and therefore that the defendant's argument that this section makes the statute

---

3. See Majority Opinion, n. 2.

unconstitutional for vagueness or lack of definiteness or certainty must fail.

. . . With this contention, [that Hechinger Company is a "nurseryman"] gentlemen, we are unable to agree as in the view the Court takes of the matter the critical operation which makes something a nursery and the operator a nurseryman is that part of the operation which is critical to the definition of nursery, and that is not the selling at retail or wholesale of the products of the nursery but the propagation of the material which is sold. It is propagation which makes an operation a nursery as opposed to the distribution in the world of commerce or transfer to the ultimate consumer in the market place of the products of the nursery. Now this record is devoid of any evidence that the defendant propagates anything that he sells either in the green goods department or the seed department or any of the live, material products which he sells. As a matter of fact, the evidence would indicate that he does not because his testimony is that he must maintain in his stores certificates of origin for those plants which are sensitive and fall within the regulation promulgated by the various, governmental agencies which regulate the sale and distribution of live, plant material, agriculture products and related items. It would make as much sense if one can argue with oneself to say that he is a fertilizer manufacturer because he sells fertilizer, or he is in the agri-chemical business because he sells the products of Ortho and others who manufacture these chemicals, or that he is in the cattle business because he sells cow manure. Nor is he in the lumber business by virtue of that fact, a tree farmer, or a saw mill, or in the foundry business because he sells ornamental casting to go on garden gates. . . ."

Judge Gilbert, who delivered the opinion for the Court of

Special Appeals [4] in affirming the grant of injunctive relief, reached the same conclusion. For the Court, he stated:

> "In this Court the appellant argues that it 'offers more than 220 varieties of growing stock for public purchase. And common sense tells us that in order to stock such growing items . . . [appellant] would have to water and fertilize the plants periodically,' in order to sell 'good and healthy merchandise.' Appellant utilizes the quoted statement as a premise upon which it grounds a conclusion that because it fertilizes and waters plants in order to sell them, it is in the business of 'raising' plants for sale and thus is a nurseryman. We decline to adopt the appellant's line of reasoning.
>
> The word 'nurseryman' is defined in *Webster's Third New International Dictionary of the English Language* (unabr. ed. 1967) as, 'one whose occupation is the scientific cultivation of trees, shrubs and plants.' [Similar definitions are found in *Funk and Wagnall's Standard College Dictionary*, Text Edition (1963); *The American Heritage Dictionary of the English Language* (1969); 67 C.J.S. *Nursery* 3 (1950).] A nursery is defined by the same source to mean 'an area where trees, shrubs or plants are grown for transplanting, for use as stocks for budding and grafting, or for sale.'
>
> In *Town of Needham v. Winslow Nurseries*, 330 Mass. 95, 100, 111 N.E.2d 453, 456 (1953), the Supreme Judicial Court of Massachusetts said:
>
> > 'According to dictionary definition a nursery is a place where trees, shrubs, plants, and so forth, are propagated from seed or otherwise for transplanting, for use as stock for grafting, and for sale. *See Miethke v. Pierce County*, 173

---

4. Hechinger Company v. State's Attorney for Prince George's County, 19 Md. App. 707, 313 A. 2d 715 (1974).

Wash. 381, 23 P. 2d 405 [(1933)]; *Attorney General v. State Board of Judges,* 38 Cal. 291, 296 [(1869)]; *Miller v. Baker,* [42 Mass. (1 Met.) 27 (1840)]; *Whitmarsh v. Walker,* [42 Mass. (1 Met.) 313 (1840)]; *Paine v. Board of Assessors of Town of Weston,* 297 Mass. 173, 7 N.E.2d 584 [(1937)].' " 19 Md. App. at 710-11, 313 A. 2d at 717.

He further stated for the Court:

"That the employees of the appellant water and fertilize the plants and shrubs that are part of the appellant's inventory, does not in our view place the appellant within the ambit of the definition of nurserymen.

We think the appellant was conducting a retail business and not, as the word is ordinarily and naturally used, a nursery. *Ergo,* appellant is not a nurseryman. If we were to adopt the argument urged upon us by the appellant we would in effect authorize every *bona fide* nurseryman in Prince George's County to engage in a retail business enterprise similar to that of the appellant. Nurserymen could then, under the guise of their statutory exemption, undertake to sell, on Sunday, the diverse and sundry items offered for sale by the appellant.

The word *nurserymen* as used in art. 27, § 534H (c) 2 is not void for vagueness, but on the contrary is clearly definitive. . . ." 19 Md. App. at 711-12, 313 A. 2d at 718.

I concur with these views. It was a special class of commercial enterprise which the legislature undertook quite limitedly to exempt; the General Assembly did not intend to exempt every business enterprise which purchases plants, shrubbery, flowers, etc., from "nurserymen" at wholesale and then undertakes on Sunday to sell these horticultural products at retail to the general public. The use of the word

"farmers" in subsection (c)(1) and the use of the term "nurserymen" in juxtaposition by legislative arrangement in subsection (c)(2) would suggest that the General Assembly intended to encompass and classify together those who grow and propagate agricultural products with those who grow and propagate horticultural products — and not those retail sellers of such nursery products grown and propagated elsewhere.